1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9
10

MARK DECLEMENTS,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

Defendant.

CASE NO. 14-cv-05069 JRC

ORDER ON PLAINTIFF'S
COMPLAINT

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, ECF No. 5; Consent to Proceed Before a United States Magistrate Judge, ECF No. 6). This matter has been fully briefed (*see* ECF Nos. 20, 24, 25).

After considering and reviewing the record, the Court concludes that the ALJ's finding that plaintiff's hernia was not a severe impairment prior to May 27, 2002 is based

on substantial evidence in the record as a whole. Prior to October, 2001, plaintiff had indicated that he was suffering from left flank pain, which was diagnosed as related to a 1mm stone in his bladder. In October, 2001, plaintiff indicated that he had been experiencing abdominal pain for a couple of weeks and was diagnosed with a right inguinal hernia. Plaintiff sought medical services again following his release from incarceration in January, 2002 and was given Vicodin for pain. Although plaintiff was told on January 16, 2002 to follow up with another doctor as soon as possible, plaintiff does not appear to have sought medical services for almost three months, and was referred for a medical examination following his application for welfare benefits in April, 2002. The relevant period of time for this appeal is from January 16, 2002, his amended alleged onset date, until his date last insured of March 31, 2002. As plaintiff was not seeking medical treatment during this time, and because plaintiff's treatment record does not demonstrate the existence of a severe impairment expected to last at least twelve months before his date last insured of March 31, 2002, the ALJ's finding that plaintiff did not suffer from a severe impairment of a hernia prior to March 31, 2002 is based on substantial evidence in the record as a whole.

Therefore, this matter is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff, MARK J. DECLEMENTS, was born in 1959 and was 42 years old on the amended alleged date of disability onset of January 16, 2002 (*see* AR. 33, 74-76). Plaintiff has a GED (*see* AR. 1200). Plaintiff last worked at North Coast Yachts cleaning up and doing general labor (AR. 36). He testified that he left this job because he "was

1  having a hard time just functioning and as far as life after being released from prison; []

2  didn't really have anywhere to go; [] never had taken care of [himself] before like that;

3  and [] just, things were getting kind of overwhelming" (AR. 36-37). He also testified that

4  he had difficulties with depression and confusion at that job (*see* AR. 37). He testified

5  that he was fired, and also that "it was kind of a mutual agreement" (*see* AR. 52).

6      It appears that plaintiff was in prison for a drug related offense (*see* AR. 39, 46-

7  47). Plaintiff testified that he used methamphetamine and heroin each about ten times

8  after he left prison, and then he entered rehabilitation just before he was shot in May,

9  2002 (AR. 37-38). Plaintiff testified at his May 1, 2006 hearing that he had one drug

10 relapse after his rehabilitation (AR. 39). However, at his August 23, 2010 hearing,

11 plaintiff indicated that he had another relapse with methamphetamine in 2007 or 2008 for

12 a short period of time, and was incarcerated for eight months in 2008 (AR. 1208, 1211).

13

14      Plaintiff could not remember when he went to the emergency room and was

15 diagnosed with hernias, but he recalled that one hernia was repaired after he was shot

16 (AR. 41). However, he testified that the repair was not successful as "too much bacteria

17 was dumped into it" after he was shot through the colon (*see id.*). Plaintiff's testicular

18 hernia was not repaired during the time of his gunshot surgery, and "then when [he] got

19 out, it strangulated" (AR. 42). He had "an old type repair" on his testicular hernia,

20 without a screen or mesh, although he testified that "it's been pretty good" (*see id.*). At

21 his 2010 hearing, plaintiff testified that he had three hernia surgeries total (*see* AR. 1214).

22

23

24

ORDER ON PLAINTIFF'S COMPLAINT - 3

According to the ALJ in the most recent written decision, plaintiff "had the following medically determinable impairments: Hepatitis C, Herniated Discs, and Hernia (20 CFR 404.1521 *et seq.* and 416.921 *et seq.*)" (AR. 744).

At the time of the 2010 hearing, plaintiff had been living with a friend with whom he had been staying for a couple of years (*see* AR. 1212-13).

## PROCEDURAL HISTORY

Plaintiff's last hearing was held before Administrative Law Judge Gary Elliott ("the ALJ") on March 20, 2013 (AR. 741-49). This case has a very complicated procedural history. The ALJ outlined the history as follows:

> On March 31, 2003 the claimant protectively filed an application for Title II disability insurance benefits [DIB] and Title XVI supplemental security income [SSI]. Initially the Commissioner granted the application for supplemental security income finding the claimant disabled as of March 2003. The Title II [DIB] claim was denied initially on August 31, 2003 and again upon reconsideration on January 27, 2004. The claimant then filed a request for a hearing before an Administrative Law Judge and a hearing was held on May 1, 2006. A decision was issued on July 28, 2006 which found that the claimant did not become disabled until May 27, 2002 [after his March, 2002 date last insured for DIB]. The claimant requested review of that decision which was upheld by the Appeals Council and the United States District Court for the Western District of Washington. The claimant then appealed to the United States Court of Appeals for the Ninth Circuit which remanded the decision back to the Commissioner on February 17, 2010 [for a hearing with a medical expert]. An Administrative Law Judge held a hearing on August 23, 2010 and a supplemental hearing on March 1, 2011. A decision denying [DIB] benefits was issued on April 21, 2011. The Appeals Council issued an order remanding that decision to an Administrative Law Judge on August 20, 2012. The claimant appeared and testified at a hearing held on March 20, 2013, in Tacoma, WA.

(AR. 741). After the March, 2013 hearing, the ALJ issued a written decision on April 11, 2013, which is the subject of this appeal before this Court (*see* AR. 741-49).

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Did the ALJ err by deciding that the hernia condition was not a severe impairment because it did not meet the durational requirement, contrary to the medical evidence and outside the scope of the Ninth Circuit Court of Appeals remand order; and (2) Did the ALJ fail to obey the order of the Ninth Circuit Court of Appeals and change a step 2 medical finding that had not been disturbed on appeal (*see* Dkt. No. 20, p. 1).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

**(1)    Did the ALJ err by deciding that the hernia condition was not a severe impairment because it did not meet the durational requirement, contrary to the medical evidence and outside the scope of the Ninth Circuit Court of Appeals remand order?**

First, plaintiff contends that the ALJ's finding that plaintiff's hernia during the relevant period of time was not severe is erroneous.

Step-two of the administration's evaluation process requires the ALJ to determine if the claimant "has a medically severe impairment or combination of impairments."

*Smolen v. Chater*, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (1996). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'" *Smolen, supra*, 80 F.3d at 1290 (*quoting* Social Security Ruling "SSR" 85-28) (*citing Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988)). The Court notes that plaintiff bears the burden to establish by a preponderance of the evidence the existence of a severe impairment that prevented performance of substantial gainful activity and that this impairment lasted for at least twelve continuous months. 20 C.F.R. §§ 404.1505(a), 404.1512(a) and (c), 416.905(a), 416.912(a) and (c); *Yuckert, supra*, 482 U.S. at 146; *see also Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998) (*citing Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995)). Any impairment that does not last continuously for twelve months does not satisfy the requirement. 20 C.F.R. §§ 404.1505(a), 404.1512(a) and (c), 416.905(a), 416.912(a) and (c); *Roberts*, *supra*, 66 F.3d at 182.

First, the Court notes that, as stated by the ALJ in his written decision, "the relevant period of consideration for the Title II claim is from the amended alleged onset date, January 16, 2002 until the date last insured of March 31, 2002, a period covering 75 days" (AR. 741-42). Relevant for this argument, the ALJ found that plaintiff did not have a severe impairment, "singly or in combination [which] caused more than minimal limitations on the claimant's ability to perform basic work activities during the period at issue" (AR. 744). In so finding, the ALJ noted as follows:

1
2
3
4

> Dr. [Jacqueline] Farwell testified that the claimant's records show that as of January 16, 2002 the claimant had had a hernia for three months. His records go on to show that the hernia was repaired in May of 2002. Dr. Farwell testified that the claimant's hernia did not satisfy the durational requirements of persisting or being expected to persist for twelve months (internal citation to SSR 82-52). She testified that the claimant did not have symptoms or effects from his hernia for a twelve month period.

5  (AR. 745).

6  Although plaintiff notes that he first went to the emergency room ("ER") on April
7  23, 2001 for pain in the lower right abdominal area, plaintiff admits that "a hernia was
8  not formally diagnosed at that time" (*see* Dkt. 20, p. 9 (*citing* AR. 235)). As noted by
9  plaintiff, the treatment providers "thought that the source of the pain was a kidney stone"
10 (*see id.* (*citing* AR. 225, 229)). *See Ukolov v. Barnhart,* 420 F.3d 1002, 1006 (9th Cir.
11 2005) (affirming ALJ's finding of no medically determinable impairment at step two
12 because of a lack of a definitive diagnosis); *Sefati v. Colvin*, 2013 U.S. Dist. LEXIS
13 173252 at *21-*22 (W.D. Wash. 2013) ("the Social Security regulations require a
14 diagnosis from an acceptable medical source to establish the existence of a medically
15 determinable impairment") (citations omitted) (unpublished opinion); *see also*
16 *Griemsmann v. Astrue*, 147 Soc. Sec. Rep. Srvc. 286, at *14-*15 (W.D. Wash. 2009).
17 
18 Regarding plaintiff's presentation in April, 2001 with abdominal pain, the record,
19 although not entirely consistent, repeatedly refers to plaintiff's *left* lower quadrant
20 abdominal pain (*see* AR. 227 (location: box checked for left); AR. 228 ("LLQ" [Left
21 Lower Quadrant]); AR. 229 ("Left flank pain"); *but see* AR. 225 ("R flank pain")).
22 Plaintiff eventually was diagnosed with a *right* inguinal hernia (*see* AR. 232 ("swelling in
23 the right inguinal area," diagnosis: "Right inguinal hernia"); AR. 233 (Assessment: "Rt
24

Inguinal Hernia")). Therefore, plaintiff's records do not demonstrate that plaintiff's presentment in the ER in April, 2001 was for pain due to a hernia. On April 23, 2001, the doctor's diagnostic impression was that plaintiff suffered from left flank pain due to the 1mm stone found in the bladder following a CT examination (*see* AR. 229). Plaintiff did not receive a diagnosis for hernia in April, 2001 and thus did not establish that he suffered from the medically determinable impairment of a hernia at that time. *See Ukolov, supra,* 420 F.3d at 1006; *Sefati*, *supra,* 2013 U.S. Dist. LEXIS 173252 at *21-*22.

Also, plaintiff in his Opening Brief notes that plaintiff was brought to the ER on October 23, 2001 "complaining of severe abdominal pain *for the last two weeks*" (*see id.* (emphasis added)). This comports with the reliance by the ALJ on the testimony of Dr. Farwell that plaintiff's "records show that that as of January 16, 2002 the claimant had had a hernia for three months" (*see* AR. 745). A review of the record reveals that on January 16, 2002, plaintiff stated "that he has had a right inguinal hernia over the last three months" (*see* AR. 232). The ALJ implicitly made the logical inference that had plaintiff been suffering from hernia pain prior to October, 2001, he would have indicated as such.  Instead, he reported having pain for two weeks previous to October 23, 2001, and he consistently and contemporaneously reported in January, 2002 that he had been suffering from hernia pain for the previous three months (*see* AR. 232; *see also* AR. 975). The Court also notes that at plaintiff's January, 2002 ER visit, the doctor indicated that plaintiff's swelling in the right inguinal area was "easily reduced," as noted by the ALJ (*see* AR. 232, 746). Therefore, based on the record as a whole, the Court concludes that

ORDER ON PLAINTIFF'S COMPLAINT - 8

the ALJ's finding that plaintiff's hernia became a medically determinable impairment in early October, 2001 is based on substantial evidence in the record as a whole. Plaintiff's amended alleged onset date is January 16, 2002. As reported by plaintiff, he had a surgery on June 6, 2002 to repair the hernia (*see* Dkt. 20, p. 10). The ALJ noted that plaintiff was discharged on June 12, 2002, and at that time, "was walking and stable for discharge" (*see* AR. 746 (*citing* AR. 252)). The ALJ found that the record supported the testimony from Dr. Farwell that plaintiff "did not have effects from his hernia that lasted twelve months or more" (*see* AR. 746).

Plaintiff contends that after his discharge in June, 2002, he was suffering from ongoing symptoms (*see* Dkt. 20, p. 10). However, the Court notes that on June 24, 2002 plaintiff reported an increase in pain because he was playing Frisbee and "overdid activities" (*see* AR. 262). There is nothing in the record to demonstrate that this was anything more than an episodic setback. The record supports the ALJ's finding that plaintiff's hernia improved after his surgery, as did his hernia-related limitations (*see id.*).

Plaintiff also directs the Court's attention to an August 6, 2002 treatment record and argues that he was still suffering from limitations and pain, and that he tried to schedule an appointment with a surgeon (*see* Dkt. 20, p. 10). However, the record demonstrates that although plaintiff was allowed to reschedule his August 6, 2002 appointment to August 21, 2002 due to reported concerns about re-herniation, the record also demonstrates that plaintiff did not show up for his rescheduled appointment on August 21, 2002 (*see* AR. 260). Dr. Farwell testified that patients with hernias can get better, and that hernias "sometimes protrude and bulge through . . . . the tissue and at

other times they don't stick out at all" (*see* AR. 1153). The record provides substantial evidence for the ALJ's reliance on Dr. Farwell's testimony in order to support the ALJ's finding that during the relevant period before his date last insured that plaintiff "did not have effects from his hernia that lasted twelve months or more" (*see* AR. 746).

In addition, plaintiff does not direct the Court to any evidence in the record that plaintiff sought any medical treatment between August 6, 2002 and May 28, 2003, after he failed to show up for his scheduled appointment (*see* Dkt. 20, pp. 7, 10). Although regarding a different period of time, Dr. Farwell testified that her inference that plaintiff was better for a few months was supported by "the fact that he didn't seek medical attention for his hernia during that time" (*see* AR. 1153).

Plaintiff's failure to show up for his August 21, 2002 appointment supports the ALJ's finding that plaintiff "did not have effects from his hernia that lasted twelve months or more," as it is a logical inference that if plaintiff was suffering disabling limitations on August 21, 2002, he would have attended his medical appointment (*see* AR. 746). The ALJ may "draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (*citing Beane v. Richardson*, 457 F.2d 758 (9th Cir. 1972); *Wade v. Harris*, 509 F. Supp. 19, 20 (N.D. Cal. 1980)). Although plaintiff presents arguments regarding a lack of ability to obtain medical treatment, plaintiff's failure to show up for a scheduled appointment with a medical doctor belies this reasoning.

As plaintiff has demonstrated only that his hernia began in early October, 2001, and as the evidence supports the ALJ's finding that any pain and resultant limitations

from his hernia were resolved, at least temporarily, before October, 2002, the Court concludes that plaintiff has not demonstrated that he suffered from any severe hernia pain or resultant limitations for the required twelve month duration. As noted previously, plaintiff bears the burden to establish by a preponderance of the evidence the existence of a severe impairment that prevented performance of substantial gainful activity and that this impairment lasted for at least twelve continuous months. 20 C.F.R. §§ 404.1505(a), 404.1512(a) and (c), 416.905(a), 416.912(a) and (c); *Yuckert, supra*, 482 U.S. at 146; *see also Tidwell*, *supra,* 161 F.3d at 601 (*citing Roberts*, 66 F.3d at 182). Any impairment that does not last continuously for twelve months does not satisfy the requirement. 20 C.F.R. §§ 404.1505(a), 404.1512(a) and (c), 416.905(a), 416.912(a) and (c); *Roberts*, *supra*, 66 F.3d at 182.

   Even if the ALJ erred in failing to find the hernia severe, which the Court does not find, any error would be harmless, as to be a disabling impairment, the impairment must have existed or be expected to persist for twelve months prior to the date last insured. *See id.*; *see also Tidwell*, *supra,* 161 F.3d at 601. For example, pursuant to a relevant federal regulation:

> The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

20 C.F.R. § 416.905(a). Therefore, by definition, if plaintiff's impairment was not expected to last for a continuous period of at least 12 months before his date last insured, it did not render him disabled. *See id.* This is the case even if subsequently the

impairment became severe or if subsequently it turned out that the impairment recurred. *See id.; cf. Tidwell*, *supra,* 161 F.3d at 601 ("there is substantial evidence that Appellant's physical impairments were not severe prior to the expiration of her insured status").

For the reasons stated, and based on the relevant record, the Court concludes that the ALJ did not err by failing to find that plaintiff's hernia was a severe impairment prior to March 31, 2002, his date last insured. Plaintiff's argument that this finding is outside the scope of the Ninth Circuit Court of Appeals remand order will be discussed below, *see infra*, section 2.

### (2) Did the ALJ fail to obey the order of the Ninth Circuit Court of Appeals and change a step 2 medical finding that had not been disturbed on appeal?

Plaintiff argues that because the previous administrative decision of July 28, 2006 included a conclusion that plaintiff's hernia condition was a severe condition that was not disturbed on appeal that it "is therefore binding on all parties" (*see* Dkt. 20, p. 11). Plaintiff does not provide any legal citation representing any authority for this position (*see id.*). Although plaintiff contends (again without legal authority) that findings of an ALJ remain binding if they are not reversed or changed on appeal, plaintiff neglects to acknowledge that the July 28, 2006 opinion was vacated by the Appeals Council on April 14, 2010 and remanded to "an Administrative Law Judge for further proceedings consistent with the order of the court for the period prior to May 27, 2002" (AR. 752).

As the July 28, 2006 written decision included the conclusion that plaintiff was disabled as of May 27, 2002 (*see* AR. 23); as the Appeals Council remanded only for proceedings "for the period prior to May 27, 2002," (*see* AR. 752); and as the ALJ's

decision subject to this appeal herein explicitly made findings and conclusion regarding only "the relevant period of consideration for the Title II claim [] from the amended alleged onset date, January 16, 2002 until the date last insured of March 31, 2002, a period covering 75 days," (AR. 741-42; *see also* AR. 749) and the ALJ explicitly in his April 11, 2013 decision concluded that plaintiff's disability began on May 27, 2002 (*see* AR. 749), the decision regarding disability as of May 27, 2002 is not disturbed by the ALJ's April 11, 2013 written decision. However, the ALJ's finding that for "the relevant period of consideration" prior to March 31, 2002 plaintiff did not have a severe impairment is a distinct finding; and, as discussed above, *see supra*, section 1, is a finding based on substantial evidence in the record (AR. 741-42). Thus, although plaintiff argues that "the scope of the issues on remand was simply to determine the correct onset date of [plaintiff's] disability," and that the "only consideration should have been the medical evidence before May 27, 2002" (*see* Dkt. 20, p. 12), this is exactly what the ALJ did in his April 11, 2013 decision: He explicitly considered only "the relevant period of consideration" (AR. 742); explicitly declined to consider other physical and mental impairments that "were made outside of the relevant period" (AR. 745); explicitly discussed the fact that the "Appeals Council remanded the prior decision so that evidence from a medical expert qualified to address the claimant's physical condition and combination of impairments for the period prior to May 27, 2002 could be ascertained" (*id.*); explicitly incorporated aspects of the former written decision into his written decision or afforded medical opinions the same weight (*see* AR. 746, 748): and, perhaps most importantly, explicitly concluded that plaintiff has not been disabled "as defined in

ORDER ON PLAINTIFF'S COMPLAINT - 13

the Social Security Act, from January 16, 2002, through May 27, 2002, the date his disability began" (*see* AR. 749 (citations omitted)). The Court does not find persuasive plaintiff's argument that the ALJ strayed beyond "the scope of the issues on remand" (*see* Dkt. 20, p. 12).

Furthermore, the findings by the ALJ in his written decision are not necessarily inconsistent with the finding that plaintiff's hernia was a severe impairment as of May 27, 2002, his date last insured. As found by the ALJ, although prior to March, 31, 2002, his hernia condition was not expected to persist for a continuous period of a year, on May 27, 2002, when plaintiff was shot, his impairments combined, including his hernia, could be expected to last for at least a year. Therefore, the ALJ's finding that the hernia was not severe prior to plaintiff's gunshot wound, but subsequently was severe, in combination with his gunshot wound and other subsequent impairments, is logical and based on the record as a whole.

In addition, the Court finds persuasive defendant's citation to Ninth Circuit and other authority regarding the law of the case and rule of mandate doctrines (*see* Dkt. 24, pp. 3-5). For example, as quoted by defendant, "[l]ower courts are free to decide issues on remand so long as they were not decided on a prior appeal [and] [actual] decision of an issue is required to establish the law of the case, [which] [] does not reach a matter that was not decided" (*id.* at p. 3 (internal citations to *Liberty Mut. Ins. Co. v. E.E.O.C.*, 691 F.2d 438, 441 (9th Cir. 1982) and § 4478 Law of the Case, 18B Fed. Prac. & Proc. Juris. § 4478 (2d ed.))) (other citations omitted)). The Ninth Circuit here did not render any decision explicitly on whether or not plaintiff's hernia was a severe impairment (*see* AR.

1068-70). Plaintiff implies that the ALJ's finding that plaintiff's hernia was not a severe impairment until May 27, 2002 is "'counter to the spirit of the circuit court's decision'" (*see* Reply, Dkt. 25, p. 4 (*citing United States v. Kellington*, 217 F.3d 1084, 1094-93 (9th Cir. 2000) (other citations omitted))). However, the Ninth Circuit explicitly indicated that plaintiff "may have become incapacitated at anytime between [January 1, 2002] and the onset date the ALJ selected of May 27, 2002" (AR. 1069). Therefore, the ALJ's findings that plaintiff's hernia impairment was not severe as of March 31, 2002, but was severe as of May 27, 2002 were explicitly within the direction and "spirit" of the Ninth Circuit's decision (*see id.*).

Plaintiff's remaining arguments similarly are unpersuasive. Although plaintiff complains about the specialty of the medical expert [ME], plaintiff has cited no authority that a medical doctor who specialized in pediatric neurology is not qualified to provide expert testimony of the type provided in this matter (*see* Dkt. 20, p. 12). This ME is a medical doctor who specialized in neurology, and although area of specialty is relevant, it does not render a doctor not qualified to render a medical opinion. *Cf. Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)) ("[i]f the Magistrate [Judge]'s conclusion that there was no psychiatric evidence is based on an assumption that such evidence must be offered by a Board-certified psychiatrist, it is clearly erroneous"); *see also* 20 C.F.R. 404.1527(c)(5).

Plaintiff also argues that the ME offered evidence before she was under oath (*see* Dkt. 20, p. 12). However, as the record indicates, and as noted by defendant, the "certified record indicated that Dr. Farwell was sworn in twice: at the beginning of the

hearing (internal citation to AR. 1140) and again (internal citation to AR. 1148)" (Dkt. 24, p. 5 n.1). Plaintiff does not reply to this argument and it is substantiated by the record (*see* AR. 1140, 1148).

Plaintiff argues that Dr. Farwell "speculates" that plaintiff would gradually experience increase in function after his surgery (*see* Dkt. 20, pp. 12-13 (*citing* AR. 1148)). However, the Court does not agree with plaintiff's characterization of the ME's testimony. Dr. Farwell indicated that she was "extrapolating from his age and the procedure he ha[d] undergone" (*see* AR. 1148). It also is clear that she is basing this opinion in part on her medical expertise as she provided her qualifications, and on her review of the medical record (*see, e.g.*, AR. 1145, 1146). Although plaintiff argues that plaintiff's condition existed for the entire duration, Dr. Farwell testified that it was her experience that patients with hernias can get better, and that hernias "sometimes protrude and bulge through . . . . the tissue and at other times they don't stick out at all" (*see* AR. 1153; *see also* Dkt. 20, p. 14). As noted by Dr. Farwell, there were significant gaps in plaintiff's treatment record, when he was not seeking medical services, and she opined based on this evidence that plaintiff would have sought medical services if he was suffering from a disabling impairment (*see* AR. 1152-53).

Although plaintiff argues that Dr. Farwell's opinion in this regard is mere speculation and argues that plaintiff did not have medical insurance, suggesting that he could not obtain medical treatment, (*see* Dkt. 20, p. 14), as noted previously, plaintiff failed to show up for a medical appointment (*see* AR. 260). Plaintiff's failure to show up for a medical appointment belies his argument that when he was not seeking services he

ORDER ON PLAINTIFF'S COMPLAINT - 16

1  was still suffering from limitations but could not obtain medical treatment (*see id.*).

2  Similarly, although plaintiff argues that Dr. Farwell agreed that she had no support for

3  her opinion that as when plaintiff went to DSHS in April, 2002, DSHS sent plaintiff to

4  Dr. Puzon, that plaintiff could have gone to DSHS sooner and obtained medical

5  treatment, Dr. Farwell actually testified that her opinion in this regard was based on her

6  familiarity with the administrative process of the Department of Labor and Industries and

7  how they manage their claims (*see* AR. 1154).

   For the reasons stated and based on the record as a whole, the Court does not find persuasive plaintiff's argument that the ALJ erred in failing to find that plaintiff's hernia was a severe impairment prior to his date last insured of March 31, 2002. This finding is based on substantial evidence in the record as a whole and is not contrary to any finding by the Ninth Circuit regarding this matter.

## CONCLUSION

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

**JUDGMENT** should be for defendant and the case should be closed.

Dated this 8th day of January, 2015.

_____
J. Richard Creatura
United States Magistrate Judge